## SOUTHWEST STONE CO. v. MISSOURI-KANSAS-TEXAS R. CO.

### No. 13605.

United States Court of Appeals
Fifth Circuit.

Nov. 30, 1951.

Rehearing Denied Jan. 7, 1952.

Frank A. Leffingwell, Ralph W. Currie, Dallas, Tex., for appellant.

O. O. Touchstone, Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BORAH, and STRUM, Circuit Judges.

HUTCHESON, Chief Judge.

Based upon an average agreement,[1] executed July 31, 1937, and the applicable tariff[2] in effect in 1950, when the claims accrued, the suit was for demurrage charges on freight cars actually placed upon defendant's tracks, for loading by defendant, at its plant at Stringtown, Oklahoma.

Plaintiff's claim was: that in no instance did the defendant, at the time it ordered the cars, designate, as the actual placement point, the point of loading. On the contrary, it designated one of its four tracks

1. This agreement provided in effect that when a car is released within the first twenty-four hours of free time, it is entitled to one credit; where held more than forty-eight hours, it is charged one debit per day for the first four days. The credits can be used to offset the debits.

2. This is the Association of American Railroads freight tariff, 4–Y, B. T. Jones, Agent, ICC 3963. It provides:

"Actual placement is made when a car is placed in an accessible position for loading or unloading or at a point previously designated by the consignor or consignee."

Rule 3, Sec. A of the tariff reads as follows:

"On cars for loading on other than public delivery tracks, time will be computed from the first 7 A. M. after actual or constructive placement and without notice of actual placement."

1, 2, 3, or 4, and plaintiff placed the cars as directed.

The defenses were: a special denial that this was so; a claim that defendant did designate the point of loading as the point of placement; and that no demurrage accrued after the cars were so placed.

Though the amount sued for and recovered was less than $500, the case was contested, before the jury, and is briefed here, as though it were a real law suit.

All the evidence in and plaintiff's motion for an instructed verdict denied, a jury verdict was taken on the question [3] whether the plaintiff had carried its burden to show, by a preponderance of the evidence, that it placed the cars as ordered by the defendant shipper, and the shipper had detained them so as to become liable for demurrage.

To this submission, defendant excepted on the ground in substance that the charge was contrary to the tariff which gives the defendant the right to designate a point for placement. There was a verdict for plaintiff, followed by a judgment, and defendant has appealed.

Here, under five numbered points, appellant presents two grounds for reversal. One of these is that the court erred in excluding certain letters from evidence. The other is that the charge was erroneous in that it in effect instructed the jury that appellee's duty was completed when a car was placed on a track, though it was placed neither in a position accessible for loading nor at a point designated by the appellee.

As the record and briefs present it, this is the substance of the first point: When plaintiff's witness, Austin, was on the stand, he was asked by defendant, whether it was not a fact that in 1923 there was an understanding about placement, and whether in 1937, at the time of the signing of the average agreement, there was correspondence between the Missouri-Kansas-Texas Railroad Company and the Southwest Stone Company, and that it was following that exchange that defendant executed the average agreement. Upon the witness stating that this was so, defendant offered in evidence its exhibits Nos. 1,[4] 2,[5] and 4.[6]

3. This was the charge on that issue:
"I charge you, gentlemen, that the placing of the car follows an order given for the car, placing for the disposition of the shipper. That placing of the car may be on a lead track, a track that could be used for getting the car to the particular loading bin, just so it was amenable to the desires, and, intentions, and purposes of the shipper.
"If the shipper, after having ordered the car, and the car was placed there, and, then did not make use of that car, and, liberate it, so that it might begin its journey in interstate commerce, within the time fixed by the Interstate Commerce Commission's regulations, then, and, in that event, it would be liable for demurrage charges, and, the amount of those charges is set forth in the figures here, so much for different days. And, if in truth, they loaded them quicker than that time, then, the shipper was entitled to certain credits, which credits would be offset against the debits, if any, against the shipper."

4. This was a letter dated 8-5-37 from SW Stone Co., W. F. Wise, Pres. to J. H. Little, Supr. M. K. T. Railroad Co., Denison, Texas, and read as follows:

"Please refer to your letter of July 28th, file 517-494-Okla., addressed to your Agent, J. E. Dwyer at Stringtown, Okla., enclosing three copies of Average Agreement Contract.
"It is our understanding that we have one of these Average Agreements in effect at this time, which was signed by the Stringtown Crushed Rock Co., in March, 1923. At that time and since there has been quite a bit of discussion as to what shall be considered as placement of empty coal cars. As you probably remember when the yard for empty storage was put in above our plant at Stringtown, it was agreed that this being for the mutual benefit of both companies, and storage for empty placement would be considered time the cars were actually let down under our bins for loading."

5. This was a letter dated 8-8-37 from J. H. Little to the Southwest Stone Company, Dallas, Texas, and read as follows:
"Referring to your letter of the 5th, relative your average agreement contract at Stringtown, Okla.

Plaintiff objecting that these exhibits were not material to the issue to be tried because they represented prior negotiations and they had been merged into the average agreement which speaks for itself, the court reserved its ruling, and there was further examination. The witness stated: "There was no correspondence made any contract or modified that contract, there was no correspondence that modified the contract or the rule." He further testified that while Mr. Little was general superintendent of transportation, he, Austin, wrote the letter in question himself.

Thereupon, the district judge sustained the objection on the grounds put forward.

Here appellant insists that the letters were not merged into the average agreement, that they dealt with matters not dealt with therein, and were supplementary thereto, and that the objection was wholly unfounded.

Appellee, maintaining the contrary, insists further that regardless of the reasons given for it, the exclusionary ruling was right because, for the further reasons set out in its brief, the letters were immaterial to the issue tendered and decided in the case. These reasons are: (1) that whatever effect the letters might have had upon the situation as it existed in 1937, they were wholly inapplicable to the facts and circumstances which underlie this suit; and (2) that they could not affect, change, or modify the applicable tariff provisions promulgated under the authority of the I. C. C. and in effect in 1950.[7] There

was the further specific insistence: that the letters were immaterial and irrelevant, in that the only practice and the only evidence, which could be material on the issues joined in this suit, is that practice and that evidence which dealt with the specific cars and the specific charges involved in this cause; and that the evidence of the actual placement of the cars in question and of the orders given for their placement precludes the consideration of earlier or prior agreements and confines the record to evidence bearing on this issue.

As to the claimed error in the charge, appellee, pointing out that it told the jury that the placing of the car must be amenable to the desires and intentions and purposes of the shipper, insists that it submitted the issue to the jury in complete fairness to the shipper's contentions.

As to the letters, a careful consideration of the record as a whole, including the undisputed evidence that the orders for the cars were given orally and that this was done after the defendant had requested written orders and the plaintiff had refused to give them, convinces us that, whatever may have been the relevancy of the letters to an earlier period and under different facts, they had none to the period in question and under the undisputed facts. Their exclusion from evidence, therefore, was not prejudicially erroneous.

As to the charge to the jury, plaintiff requested no special charges, made no objection to the charge as a whole, and com-

---

"It is our understanding that placement of cars for loading will be computed from the time you pull them off the storage track and begin to load. I think that arrangement has been in effect for some time."

6. This was a letter dated 3-13-23, from R. W. Edwards to Stringtown Crushed Rock Co., McAlester, Okla., and read as follows:

"Replying to your letter of March 9th, regarding placement of cars for loading.

"Due to the fact that cars are placed on your tracks for prospective loading, we would consider them as being placed only when they are placed under the

loading chute; in other words each car loaded during the day will be considered as having been placed that day at 7:00 A. M. and time charged until forwarding directions are furnished.

"Trusting this agreement meets with your approval, I am

"Yours truly,"

7. The record shows that at a later period in the trial the district judge again excluded the letters from evidence. This time because of the provision in the average agreement, "We will fully preserve and comply with all the terms and conditions of said rules as they are now published or may be hereafter modified by duly published tariffs."

plains here only of the particular paragraph pointed out in his first ground of error. We agree with defendant that this charge was completely fair to plaintiff and was not erroneous.

No reversible error appearing, the judgment is affirmed.